# KNOWLTON'S CASE.

*(In the Superior Court of Denver, November 15, 1883—On writ of habeas corpus.)*

1. EXTRADITION—REQUISITION NOT AFFECTED BY CHANGE IN GOVERNORS. It is not material whether a requisition demanding a fugitive from justice was issued by a Governor in office at the time of its presentation. The requisition is the act of the Governor, and not the individual who holds the office. When issued by the Governor of a State, it will remain in force until recalled or revoked by the same authority.

2. SAME—CONVENTIONAL, AND CAN ONLY BE ENFORCED UPON THE TERMS PROVIDED. Aside from the constitution and statutes enacted pursuant thereto, there is no provision for the extradition of fugitives from justice. The States are separate and independent sovereignties, and the criminal laws of one cannot be enforced in another; and but for the conventional arrangement, amounting to a treaty stipulation in the constitution of the United States, a fugitive from justice could not be extradited. A strict compliance with the laws regulating the question is necessary to authorize the Governor to issue his warrant for the arrest and return of a citizen, upon the requisition of the Governor of another State. A requisition which is not accompanied by a copy of an indictment or affidavit certified by the demanding Governor to be authentic, will not authorize the Governor of this State to issue his warrant under the extradition laws. The Governor in such case has no authority except that given by the statute.

3. SAME—HABEAS CORPUS. In case of one charged with crime in a foreign State, and brought into Court upon *habeas corpus*, the matter must be determined upon the facts in the return shown to have existed at the time of the service of the writ, and not upon facts which occurred subsequent thereto.

DAWSON, J. On the 14th day of October, 1883, upon the presentation of a petition therefor, a writ of *habeas corpus* was issued directed to respondents, William Smith and Henry Brady, commanding them to bring the body of petitioner, together with the time and cause of his imprisonment, into this Court on the 15th day of October. The return to the writ is as follows:

"We, William Smith, chief of police of the city of Denver, and Henry Brady, city jailer of said city, and respondents to the writ of *habeas corpus* issued herein, by virtue of this writ to us directed and delivered October 14th, 1883, do hereby make known to the Superior Court, and to the Hon.

Vol. IV–No. 12

James A. Dawson, the Judge thereof, that the said Harvey Knowlton, *alias* H. W. Claxton, was by said William Smith, chief of police of the city of Denver, and one of the defendants herein, arrested on the 13th day of November, A. D. 1883, on due information that the said H. W. Claxton had before that time committed a felony, and that he is now detained and restrained of his liberty by defendants under and by virtue of a warrant duly issued by His Excellency, James B. Grant, Governor of the State of Colorado, and attested under the great seal of said State, a copy of which said warrant is hereto annexed, marked exhibit "B," and made part of this return. Respondents, for further answer and return, say that they have been served with an order duly issued by His Excellency, James B. Grant, Governor as aforesaid, and duly attested under the great seal of said State, by which said order these respondents are commanded to deliver to the custody of one Con. F. Grover, the body of H. W. Claxton, the said H. W. Claxton being one and the same person as the said Harvey Knowlton, *alias* H. W. Claxton, in order that the said Con. F. Grover may convey the said H. W. Claxton out of this State, etc., etc., as will more fully appear by a copy of said order hereto annexed, marked exhibit "A," and made part of this answer and return. Respondents, for further answer and return say, that the said Con. F. Grover has exhibited to these respondents, a paper duly executed, showing that he has been duly appointed agent of the State of Nebraska, to receive the said H. W. Claxton and convey him, the said Claxton, into the said State of Nebraska, where he, the said Claxton, stands charged with the crime of grand larceny, as will more fully appear by a copy of said paper, marked exhibit "C," and hereto annexed and made a part of this answer and return. Respondents, for further answer and return, say that the said Con. F. Grover has exhibited to them, the said respondents, a paper duly executed showing that he has due authority from His Excellency, James B. Grant, Governor of the State of Colorado, to receive into his custody the said H. W. Claxton, and convey him out of the State of Colorado, as will more fully appear by a copy of the said paper, marked exhibit "D," hereunto annexed and made part of this answer and return. In obedience to said warrant

and command of His Excellency, the Governor of Colorado, we detain the said Harvey Knowlton, *alias* H. W. Claxton, in the city jail of the city of Denver, county of Arapahoe, and State of Colorado, as we are thereby commanded; which is the same imprisonment and detention mentioned in said writ, and none other."

Attached to said return are the exhibits therein referred to, substantially as alleged, the warrant of the Governor being dated Oct. 18th. Petitioner controverts by sworn pleading the sufficiency and traverses the statements of the return upon these grounds:

*First*—That the return is evasive in not.setting forth the actual cause of the arrest, and the information or authority upon which it was made, the felony committed, and time and place thereof.

*Second*—That no lawful authority is exhibited or suggested as to the arrest and detention complained of, concerning which respondents were required to make return.

*Third*—That the return is untrue in that respondents at the time of the arrest had no legal information that petitioner had committed a felony. That the arrest and imprisonment complained of were not and could not have been under the warrant of a Governor.

*Fourth*—That the warrant of the Governor of the State of Colorado, set out in the return, is void and of no effect, because not issued in accordance with the laws of this State or of the United States. In support of this position, certified copies of the requisition of the Governor of Nebraska, and the accompanying papers and documents, upon which the Governor of this State based his action in issuing the said warrant, etc., are set out and made part of the traverse.

*Fifth*—And further states that Albinus Nance, by whom the requisition hereinbefore referred to was issued, ceased to be the Governor of the State of Nebraska in January of this year, and that, in that month his successor was duly commissioned and qualified, and entered upon the discharge of his duties as such. That as to said requisition and its presentation to the Governor of this State, as set forth herein, the present Governor of Nebraska had no knowledge or information, and neither

authorized its presentation, or the incurring of the expenses incident to its enforcement, by any act or direction on his part, as petitioner is informed and verily believes.

I will consider these several matters, so far as may seem necessary, in reverse order:

*First*—I do not think it material that the requisition presented to the Governor of this State, and upon which he acted, was issued by a Governor of Nebraska who had gone out of office after it was issued, and before its presentation to the Governor of Colorado. The issuance of the requisition was the act of the Governor, and not of the individual who, for the time being, was the incumbent of the office. If issued by the Governor of the State, it remained in force until recalled or revoked by the same authority. Doubtless it would have been competent for the Governor who issued the requisition, or his successor in office, to have countermanded or recalled it before action thereunder, but this is not averred. If this petitioner has violated the laws of the State of Nebraska, and is a fugitive from its justice, he cannot avail himself of a change in the office of Chief Executive of that State, in order to escape the consequences of his offense.

*Second*—The fourth ground relied upon by petitioner presents a more serious and difficult question. The requisition of the Governor of Nebraska recites that, "whereas, it appears by indictment duly authenticated in accordance with the laws of this State, that H. W. Claxton stands charged with the crime of grand larceny, committed in the county of Lincoln, in said State, and it has been represented to me,   *   *   now, therefore, pursuant to the provisions of the constitution and laws of the United States in such case made and provided, I do hereby require that said H. W. Claxton be apprehended and delivered," etc.

Attached to said requisition, by a ribbon, is what purports to be the copy of an indictment, found by the grand jury of the county of Lincoln, State of Nebraska, charging one H. W. Claxton with the crime of grand larceny, attested by what purports to be the certificate of the clerk of the District Court of said county and State, with the seal of the Court attached.

Article IV, section 2, of the Constitution of the United

States, is in these words: "A person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." As the constitution made no provision for the mode of executing this provision, the Congress of the United States passed an act, approved February 12, 1793, entitled "An act respecting fugitives from justice," etc., which is still in force, the first section of which provides:

"SEC. 1. That whenever the executive authority of any State in the Union, or of either of the Territories northwest or south of the river Ohio, shall demand any person as a fugitive from justice, of the executive authority of any such State or Territory to which such person shall have ·fled, and shall moreover produce a copy of an indictment found, or an affidavit made before a magistrate of any State or Territory as aforesaid, charging the person so demanded with having committed treason, felony or other crime, *certified as authentic by the Governor or Chief Magistrate of the State or Territory* from whence the prisoner so charged fled, it shall be the duty of the executive authority of the State or Territory to which such person shall have fled, to cause him or her to be arrested and secured," etc.

While this is the paramount law on the subject, binding upon all States, yet it is doubtless competent for the several States, by statute, to provide other conditions not repugnant thereto, upon which fugitives may be delivered. That is to say, a State, if it choose may require its Executive to surrender fugitives upon terms less exacting than those prescribed in the act of Congress. But I apprehend the Executive has no authority in the premises, other than that conferred upon him by the act of Congress or the statutes of the State. The statute of Colorado (Gen. Laws, 480, Sec. 1274) provides that "whenever the Executive of any other State, or of any Territory of the United States, shall demand of the Executive of this State, any person as a fugitive from justice, and shall have complied with the requisitions of the act of Congress in that case made and provided, it shall be the duty of the Executive of this State to

issue his warrant under the seal of the State to apprehend said fugitive, directed to any sheriff, coroner or constable of any county in this State, or other person whom the said Executive may think fit to intrust with the execution of such process. Any of said persons may execute such warrant anywhere within the limits of this State, and convey such fugitive to any place within this State which the Executive in his warrant may direct." From this it will be seen that the Legislature of this State has not seen fit to relax in any degree the act of Congress, but authorizes the Governor to issue his warrant only when the requisitions of that act shall have been complied with, except in the state of case provided for in section 1277, of the General Laws, which does not apply in this instance.

The act of Congress requires the concurrence of three things in order to authorize the Governor to issue his warrant, viz:

*First*—That there shall be a demand from the Executive of the State from which the fugitive has fled.

*Second*—That with this demand shall be produced "a copy of an indictment found, or affidavit made before a magistrate, charging the person so demanded with having committed treason, felony or other crime."

*Third*—That such copy of indictment or affidavit "shall be certified as authentic by the Governor or Chief Magistrate of the State or Territory from whence the prisoner so charged fled."

In this case the demand was made in due form, or in such form as seems to me to be a substantial compliance with the requirements of the law, and therefore sufficient. There was also produced what purports to be a copy of an indictment, and we may assume that it was produced by the Governor of Nebraska, for it came attached to his requisition, though not referred to as an exhibit therein, or otherwise identified. But neither upon the copy itself, nor in the requisition, nor in any other form did the Governor of Nebraska certify to the authenticity of such copy. It is true the requisition commences with this recitation, "Whereas, it appears by indictment duly authenticated in accordance with the laws of this State, that," etc; but that indictment was the evidence upon

which he based his action, and being satisfactory to him is of no concern to others. It is possible, indeed it is probable, that instead of an indictment the paper before him was a copy of an indictment, and the same copy which was produced to the Governor of this State, attached to the requisition, and that the Governor of Nebraska intended to attest its authenticity by the words employed in the preamble to the requisition. But when the liberty of a citizen is involved, the Courts are not authorized to act upon mere probabilities. They must resolve all doubts in favor of the accused. It is also possible that the copy of indictment is spurious—it not being certified as authentic. It is well said in *Manchester's case*, 5 California, 237, that "the extradition of a subject is a dangerous power, which cannot be too carefully watched, and ought not to be trusted to the Governor alone."

That was a case of *habeas corpus*, in which the release was demanded because of defective authentication of the affidavit upon which the requisition was based. The requisition, however, certified that the affidavit, which accompanied it, was "duly authenticated according to the laws" of the demanding State, and so was properly held sufficient. In *ex parte Shelden*, 34 Ohio St., the Court states the language of the requisition to be, "whereas, it appears by the annexed papers, duly authenticated according to law, that Stephen Shelden stands charged," etc., and adds: "This language, fairly interpreted, is a compliance with the act of Congress, which requires the copy to be certified as authentic. It negatives the idea that the copy annexed is spurious or fictitious, and shows that it is genuine." In that case the Court properly held, that when the Governor of the demanding State is required to act, it is for him to determine whether the affidavit or indictment is duly authenticated in accordance with the laws of his State, and if he is satisfied that it is, then he may make such authentication the basis of information upon which he may certify the fact, and thus meet the requirement of the statute.

In *Kingsberry's case*, 106 Mass., 223, the demanding Governor certified that a copy of the affidavit, duly authenticated according to law, was annexed to the requisition, when in fact it was not "annexed," in the sense of being made fast to it, but

simply accompanied the requisition. This was not only a substantial, but a literal compliance with the act of Congress in that behalf. Counsel have had abundant time for investigation in this case, and no authority has been presented in which the warrant of the Governor is justified, when the requisition is unaccompanied by an original or the copy of an affidavit or indictment properly identified, and, in some form, certified as authentic by the Governor of the demanding State. In the absence of such authenticated copy of the indictment in this case, I am, after a careful investigation of the subject, driven to the conclusion that there was not such a compliance with the State and Federal Statutes by the Governor of Nebraska as authorized the Governor of this State to issue his warrant upon the requisition presented to him.

It is therefore unnecessary that I should consider at length the other questions raised. I may, however, add briefly, that upon a more careful examination of the authorities I am inclined to hold that in cases like this, in which no violation of the laws of this State is charged, arrests can only lawfully be made in the method prescribed in the statute; and that a valid warrant from the Governor upon requisition, coming to the hands of the person detaining the petitioner, after the service of the writ of *habeas corpus,* and set out in his return, would not be sufficient; that the Court should decide upon the facts stated in the return, which existed at and prior to the service of the writ, and not upon those subsequently occurring.

*Dows' case,* 18 Pa. St., 39, relied on as authority in support of the view that if there is lawful cause for detention at the time of the hearing, the prisoner must be held, no matter how unlawful the arrest, I do not think in point. In that case the petitioner was practically kidnapped in the State of Michigan and taken to the State of Pennsylvania, where he stood charged with crime. The Court held, that in as much as the State of Michigan made no complaint of the invasion of her sovereignty, and in view of the fact that the return showed that the prisoner was detained to answer the charge of violating the laws of the State in which he was held, and the same offense for which the respondent originally held him, he would not be released, but remanded and held to answer. There can be

no question but that a prisoner lawfully arrested, but upon a defective warrant, or without warrant, as may be the case where the charge is a felony committed within the State, will not be discharged on *habeas corpus*, if prior to the hearing proper authority be shown for his detention. (*Rex* v. *Marks*, 3 East., 127; *Rex* v. *Gordon*, *ibid*, 572 *n.*) But there can be no lawful arrest in one State for a crime committed in another, except in strict accordance with statutory provision. In *Dows' case*, *supra*, the Court says: "As regards all but Federal stipulations, the States of the Union are independent sovereignties, and the only right which one of them has to claim the arrest of a fugitive from its justice in the territory of another, is conventional. It is created by treaty stipulation in the Federal constitution; and it can be exercised only in the way therein pointed out." From the foregoing views it follows that the petitioner must be discharged.

*Miller & O'Riley* and *B. F. Montgomery*, for petitioner.

*Attorney General Urmy*, for respondents.